THOMPSON, Judge.
Way appeals his judgment and sentence for the crime of grand theft. We reverse and remand.
A jury convicted Way of grand theft based on tenuous circumstantial evidence and the uncorroborated testimony of one eyewitness that Way was the person that committed the crime. The evidence tended to show that Way had cashed a check which had been stolen during a burglary of a Femandina Beach business.
At trial, Deputy Alberta testified that he had been called to investigate a burglary at approximately 10:00 p.m. on July 3, 1984. Alberta further testified that earlier that day he had observed Way’s car near the business which was burglarized. Usable fingerprints were lifted from the area of the window through which the burglars had apparently gained access to the building. The fingerprints were not Way’s. Way took the stand in his own defense and said that on the day in question he had run out of gas on his way home from work at approximately 5:15 p.m. He indicated that he had then steered his car into the parking lot of the building to avoid having to leave it in a ditch on the side of the road. He walked two blocks to “Jeff Stevens” place, where he bought gas, returned to his car, restarted it, and proceeded home.
Other evidence showed that in late June 1984 one Jo Ella Jones, a customer of the burgled business, had received a check from Amelia Island Plantation and had thereafter endorsed it and sent it to the business in payment of a debt. The bookkeeper of the business testified that after the burglary she discovered that the check was missing, and that she then so informed the sheriff’s office and the local banks. A few days later, a tavemkeeper who owned the Island Bar and Barbecue (Island Bar) attempted to deposit the check in his business account at one of the local banks. Deputy Alberta obtained the check and took it to the Island Bar where he inquired about the circumstances of its negotiation and determined that Alvin Williams, who was bartender at the bar, was the person who cashed the check. Alberta testified that when he first interviewed Williams, Williams told him that the person who cashed the check was “kin to” one Willie Coleman. When Williams testified he insisted he had told Alberta only that the person who cashed the check “resembled” or “reminded him of” Willie Coleman or Willie Coleman's younger brother. When Alberta later reinterviewed Williams, he showed him a single photograph of Way and asked him whether the photo depicted the person who cashed the check. Williams then identified the photograph as being a picture of the person who had cashed the check. Objection was made to the question whether Williams had identified Way as being the individual who cashed the check, but the objection was overruled.
Williams’ testimony on direct examination was that he remembered cashing the check because it was an Amelia Island Plantation check, and that Way was the person who cashed it. Cross-examination elicited the information that Amelia Island Plantation cheeks are routinely cashed at the bar and that Way does not look like Willie Coleman. It also revealed that Williams’ identification of Way was of highly questionable validity and that he was confused as to the circumstances of the cashing of the check. He could not remember the date the check was cashed, or what the person who cashed it was wearing, or whether the person cashing it had a beard or a broken front tooth as Way did both at the time the check was cashed and at the time of trial. The jury convicted Way of grand theft and this appeal followed.
Within a few weeks after the conviction, evidence was discovered which tended to prove that Way was not the perpetrator of either the burglary or the grand theft. The police were able to match the fingerprints found at the scene of the burglary with one Melvin Benjamin, who is Willie Coleman’s younger brother. Benjamin *1323 thereafter confessed to the burglary and named one Louis Gillespie as his accomplice and as the person who cashed the check at the Island Bar.
While this appeal was pending appellate counsel filed a Petition for Writ of Error Coram Nobis in this court instead of moving this court to relinquish jurisdiction so that such a petition could be filed in the circuit court. Attached to the petition were (1) an affidavit of Benjamin unequivocally asserting that he and Gillespie committed the burglary and that immediately after the burglary they had gone to the Island Bar where he personally saw Gillespie hand the check to Alvin Williams, (2) an affidavit of an investigator attesting to the correctness of a transcript of an interview he conducted with Williams wherein Williams admitted that he was mistaken as to his identification of Way as the person who cashed the check, (3) an affidavit of Williams stating that he had been “definitely mistaken” when he identified Way, (4) an affidavit of a friend of Way’s family indicating that after trial Williams had admitted to her that he was not really sure Way was the person who cashed the check, and (5) an affidavit of an employee of Jeff Stevens automobile dealership who loaned appellant a gas can and sold him some gas at around 5:00 p.m. on July 3, 1984.
The only testimony at trial identifying Way as the party who cashed the check was given by Alvin Williams. Williams’ testimony identifying Way, as well as Alberta’s testimony that Williams identified Way as the person who cashed the check, should have been excluded. On appellate review, the question whether the due process standard for photographic identification has been met and whether an out-of-court identification should be excluded is determined by a two-pronged test: (1) did the police employ an unnecessarily suggestive procedure in obtaining the out-of-court identification; and (2) if so, considering all of the circumstances, did the suggestive procedure give rise to a substantial likelihood of irreparable misidentification. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Grant v. State, 390 So.2d 341 (Fla.1980), cert. denied, 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981); Carrasco v. State, 470 So.2d 858 (Fla. 1st DCA 1985). Even a lineup or a photo spread of a number of individuals can be impermissibly suggestive, depending on the composition of the lineup or photo spread. Certainly, use of a single photograph is one of the most suggestive methods of identification possible and is impermissibly suggestive under most circumstances. The use of the single photograph of Way by Deputy Alberta to obtain the identification of Way in this case was clearly impermissibly suggestive. As to the second prong of the test, a review of the evidence and all of the circumstances shows that the suggestive procedure did give rise to a substantial likelihood of mis-identification. As noted previously, except for his identification of Way as the person who cashed the check Williams’ testimony regarding the cashing of the check was vague and indefinite. He did not remember the date the check was cashed or what the person who cashed it was wearing, nor could he remember whether the person had a beard or a broken tooth which Way had at the time and still had at the time of trial. He thought that he had told Alberta that the person who cashed the check “resembled” or “reminded him of” Willie Coleman or Willie Coleman’s younger brother. Considering these facts and circumstances, the highly suggestive procedure of presenting Williams with a single photograph of Way did create a substantial likelihood of mis-identification. This is. confirmed and borne out by subsequent events, all of which indicate that Way was probably not the person who cashed the check. Benjamin confessed that he and an accomplice committed the burglary in which the check was stolen. The fingerprints found in the burglary investigation were identified as belonging to Benjamin, who is the younger brother of Willie Coleman. In addition, Benjamin stated that he was present at the Island Bar when the check was cashed, and that his accomplice in the burglary, not Way, cashed the check. Williams, the only person identifying Way as the one who committed the crime, recanted his identification *1324 testimony and by affidavit stated “... I was definitely mistaken when I identified Reginald B. Way at trial, as the person who tendered the check.” Under these facts and circumstances, both of the requirements of the two-pronged test have been conclusively met. Accordingly, we hold that the evidence of the identification should have been excluded.
REVERSED and REMANDED for a new trial or further proceedings not inconsistent with this opinion.
SMITH and WIGGINTON, JJ., concur.